## APPEAL OF H. B. LATSHAW ET AL., TRUSTEES.

[LATSHAW ET AL., TRUSTEES, v. SHAFFER ET AL., TRUSTEES.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF NORTHUMBERLAND COUNTY, IN EQUITY.

Argued May 24, 1888—Decided October 1, 1888.

1. Where land purchased is devoted by the owners to a particular use, which use entered into the consideration of the contract by which it was created, one of the tenants in common cannot defeat the joint purpose

by a writ of partition, without the consent of the co-tenants: Coleman v. Coleman, 19 Pa. 100, explained and followed.

2. Land was purchased by five congregations, composing a ministerial charge in the Evangelical Lutheran Church, for a parsonage for their joint benefit; one congregation could not proceed for partition of the land, without the consent of the other congregations: Brown v. Lutheran Church, 23 Pa. 495, followed.

3. Ordinarily, when a deed is made to trustees for a church or other charity, the fee vests at once in the association; for, the trust being raised only for the purpose of taking and passing title, it is immediately executed; but not so where the trust is active and continuing, as where it is created for the support of a special use.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 330 January Term 1888, Sup. Ct.; court below, No. 139 Eq. D.

On December 24, 1885, H. B. Latshaw, Isaac Reitz and John Tressler, trustees of St. Peter's Church, filed a bill in equity against D. W. Shaffer, trustee of St. David's Church and congregation; John Hetrick, trustee of Himmel's Church and congregation; W. A. Shaffer, trustee of St. Paul's Church and congregation, and Samuel Long, trustee of Emanuel's Church and congregation, praying for a commission of partition to divide and allot certain real estate held by the several congregations in common and used as a place of residence for the minister in charge of the churches, and for general relief.

An answer having been filed, issue was joined, when *Mr. W. I. Greenough* was appointed examiner and master, who found the following as the material facts of the case:

The complainant and respondent congregations were members of the same general organization, known as the Evangelical Lutheran Church. In this body the highest authority is the General Conference, composed of several synods. Each synod is divided into conferences, the conferences consist of congregations. A ministerial charge is formed by order of a conference only, and may be composed of one or more congregations, over all of which, if more than one, the pastor or minister has charge and jurisdiction. The congregations, complainant and respondent, St. Peter's, St. David's, Himmel's, St. Paul's and Emanuel's, had been formed by the proper

authority, the conference to which they belonged, into one ministerial charge or pastoral district, under the name of the Mahanoy Ministerial Charge of the county of Northumberland.

On April 29, 1881, Benjamin Stepp and John Tressler, with their wives, in consideration of $1,400, conveyed to "John Kehler, trustee of the Lutheran Congregation of Himmel's Church, Abraham Schlegel, one of the trustees of the Lutheran Congregation of St. Peter's Church, Enoch D. Raker, trustee of the Lutheran Congregation of Emanuel's Church, Henry Wolfe, trustee of the Lutheran Congregation of St. Paul's Church, and Samuel Schlegel, trustee of the Lutheran Congregation of St. David's Church, all in the county of Northumberland, state of Pennsylvania (which several named Lutheran Congregations form the Mahanoy Lutheran Ministerial Charge, of said county of Northumberland)," a certain tract of land therein described, containing 9 acres and 118 perches, with the buildings thereon erected, to have and to hold, etc., "to and for the only proper use, benefit and behoof of the aforesaid party of the second part and their successors and assigns forever." The purchase money was made up by contributions from each congregation, and the purchase was made for a parsonage for the minister in charge of the contributing congregations.

After the purchase of the parsonage property the trustees of the five congregations leased the property at a nominal rental to Rev. J. F. Bayer, the minister in charge, who went into possession and thereafter continued to occupy the property.

In 1884, an opposition to Mr. Bayer arose in St. Peter's Church, resulting in a meeting at which by a vote of a majority of the members it was resolved that he "shall not any longer be the pastor of this one Evangelical Lutheran St. Peter's Congregation." The other congregations adhered to Mr. Bayer.

Mr. Bayer then ceased to officiate for St. Peter's and the minority withdrew with him and formed a new congregation called St. John's Church, and began worship in a new building erected near by. Mr. Bayer thereafter continued in charge of the new congregation with the four others, respondents in this proceeding, St. Peter's being in charge of different ministers supplied.

In the summer of 1885 propositions were made by St. Peter's to the respondent congregations, looking to a sale of St. Peter's interest in the parsonage property, or, the purchase by St. Peter's of the interests of the remaining congregations; or, for a public sale of the property to the highest bidder; or, for other negotiations. These propositions were considered by the respondent congregations, but no agreement upon the subject was reached. St. Peter's then filed this bill.

Two grounds of defence against the complainants' bill were raised by the respondents. One was, that the complainants were not entitled to partition because they were not the proper representatives of St. Peter's Church or congregation, as they were "seceders" and had violated the laws of the Evangelical Lutheran Church by their dismissal of Mr. Bayer and their refusal to permit him and his adherents to worship in the church building, and also in their procurement of other ministers to supplant Mr. Bayer in the performance of ministerial duties. The master, discussing First M. P. Ch.'s App., 16 W. N. 245; Ramsey's App., 88 Pa. 60; Sutter v. Ref. D. Church, 42 Pa. 503; Schnorr's App., 67 Pa. 138; Roshi's App., 69 Pa. 462; App v. Lutheran Cong., 6 Pa. 201; Trustees v. Sturgeon, 9 Pa. 321; Winebrenner v. Colder, 43 Pa. 244, proceeded:

The majority members of St. Peter's have not adhered to the regular order of the church organization, but have declared themselves separated from the Mahanoy Charge, and have dismissed from their church edifice the minister of that charge and have refused his ministerial services and duties, and instead have called in other ministers of the same denomination to perform those services. In all these respects they have violated the law of their church and are, therefore, not the true congregation and corporation, and are not entitled to demand partition of the parsonage even if it is partable.

The second question or ground of defence proposed by the answer is, that as the money was raised and dedicated for the sole purpose of purchasing a parsonage for the use of the minister in charge of the Mahanoy Charge and the purchase was made in accordance with that purpose, there cannot be a division or partition or any other disposition of that property so long as the Mahanoy Charge continues, and especially so, when

as here such division defeats the original purpose of the contributors to the purchase.

Under the acts of February 6, 1731, 1 Sm. L. 193, and August 2, 1842, P. L. 465, religious societies "may take and hold lands or tenements for the purpose of burial grounds, churches, parsonages, school-houses and alms-houses, and to have and to hold the same according to the respective rules and disciplinary regulations of the said religious societies." And therefore "a conveyance to their trustees constitutes an executed legal estate in the congregation itself:" Brendle v. German Ref. Cong., 33 Pa. 415. "All religious societies hold land for a qualified purpose, because the law does not allow them to hold for a general purpose. But the qualification has place only as between the public and the holders and not between the grantors and holders. It is not a qualification of the estate, but of the uses to which in such hands it may lawfully be applied. It is not intended to prevent alienation for general purposes, but to prevent a religious society from using land for general purposes. It defines the duties of the religious societies to the state and not to the grantors." "Those grants are, as between the grantors and grantees, fees simple, and, as between the trustees and beneficiaries, they are trusts:" Griffitts v. Cope, 17 Pa. 100; Schnorr's App., 67 Pa. 138; McGinnis v. Watson, 41 Pa. 15, 16.

These congregations acquired a fee simple title in the land, but it was bought by them for a special and lawful purpose, and is held in trust for the benefit of these congregations while they constitute one ministerial charge. No doubt if all join they can convey to a purchaser a good title for general purposes, but, as trustees, the proceeds ought to be applied by them to the same uses and purposes. As to the grantors, they will be regarded as holding the title as tenants in common; but as to the beneficiaries, the five congregations, or their officers, are but one person and trustee to hold the parsonage for the one purpose of providing a home for the pastor of the one ministerial charge or pastoral district composed, at present, of five congregations. Partition or division of any kind will defeat the purpose of the purchase, and upon a distribution of the proceeds or valuation money, give to each congregation a fund which properly can only be used in another joint pur-

chase for the same purpose. A trustee will not be permitted to defeat the trust. Assuming that the majority part of St. Peter's and their officers are the true congregation and corporation, still they ought not to be permitted to defeat the purpose of this purchase by a sale or division of the parsonage. As a ministerial charge is governed, by the church law, by a majority of the councils of the several congregations acting separately, but through their trustees, and the majority of the councils of the Mahanoy Charge have decided to reject any offer or proposition of sale or division of the parsonage and resist division by their answer in this case, the one congregation, St. Peter's, ought not to be permitted to violate the law of their church organization by means of a proceeding in the civil law courts for partition.

It is therefore recommended that a decree be made, and it is hereby made, that the bill of complaint in this case be dismissed at the cost of the complainants.

Exceptions, filed by the complainants to the report of the master and to the decree recommended, were overruled by the master, and renewed in court. On January 28, 1885, the court, ROCKEFELLER, P. J., filed an opinion which, after reviewing the findings of the master upon the facts, proceeded:

I do not decide that two or more religious societies or congregations, owning and using separate places of worship or not, or together forming a pastoral district or ministerial charge, purchasing property to be used as a parsonage, would not be tenants in common and as such entitled to partition. But in the case of Brown v. Lutheran Church, 23 Pa. 500, Judge WOODWARD, in speaking of the rights of parties to have partition, says: "yet circumstances of their own creation will sometimes induce the courts to deny them this right, a striking instance of which may be seen in Coleman v. Coleman, 19 Pa. 100." The master has fully found all the facts and circumstances of the present case, especially as to how the money was raised, and the purpose for which it was dedicated, and holds that a division, or sale of the property, would defeat the original purpose of the contributors to the purchase, which was special and lawful. As before remarked whether this is so or not, I am of opinion that, under all the facts found by the

master, some of which I have mentioned, the complainants are not entitled to partition.

And now to wit, January 28, 1888, the exceptions are dismissed, the report of the master confirmed, and the bill of complainants dismissed, at the costs of the complainants.

Thereupon the complainants took this appeal and assigned the decree dismissing their exceptions and confirming the report of the master as error.

*Mr. J. Nevin Hill* (with him *Mr. S. P. Wolverton* and *Mr. George Hill*), for the appellants:

1. By act of April 11, 1799, 3 Sm. L. 386, the Supreme Court has original jurisdiction over the whole commonwealth, as to the granting and proceeding upon writs of partition, at the suit of any tenant in common. By act of March 28, 1806, 4 Sm. L. 335, the respective county courts have such jurisdiction. By § 1, act of April 7, 1807, 4 Sm. L. 398, "The courts of Common Pleas . . . . . are hereby authorized to issue writs of partition in all cases in which partition is demanded, of lands . . . . . owned and held . . . . . in common." By § 3, act of March 17, 1845, P. L. 160, "The Court of Common Pleas of Philadelphia county shall . . . . . have all the power and jurisdiction of a court of equity, in all cases of dower and partition," etc. This act was extended to all courts of Common Pleas in the state by the act of February 14, 1857, P. L. 39, under which this court decided that a bill in equity might be filed in any case when partition was demandable at law: Brown's App., 84 Pa. 457.

2. "Partition in some form, unless waived by an agreement between the co-tenants, is something to which each has an absolute and unconditioned right. In invoking the aid of a court of competent jurisdiction to enforce this right, he need not show any special cause for the partition. That he is a co-tenant and no longer wishes to remain so, is sufficient to entitle him to relief:" Freeman, Co-tenancy and Partition, ed. 1866, § 433. The rule as stated is not negatived by the celebrated case of Coleman v. Coleman, 19 Pa. 100. That case was distinctly put upon the ground, not alone of an agreement to hold as tenants in common, but also that the agree-

ment of the parties formed an essential part in a solemn judgment of a court by which the adjacent properties had been parted. That the property was not to be parted was res adjudicata. But Mr. Justice WOODWARD said in that case,—and it is considered an extraordinary case of the refusal of partition both at home and in other states :— "Estates in common are undoubtedly meliorated by partition into severalty, and the interests of society require the statutes of partition to be liberally construed." The same eminent judge delivered the opinion of this court in the case of Brown v. Lutheran Church, 23 Pa. 495, in which he said : "The law of partition in Pennsylvania is adapted to every exigency of tenancies in common; for, if the property cannot be parted without prejudice, it may be put into the market and sold, and in general partition is a right of tenants in common. Yet circumstances of their own creation will sometimes induce the courts to deny them this right, a striking instance of which may be seen in Coleman v. Coleman, 19 Pa. 100."

3. That is to say, in the light of Coleman v. Coleman and of Brown v. Lutheran Church, there are two instances in which partition will be denied, exceptions to the general rule, and they are : first, where the parties have made a solemn agreement in writing not to partition, and have permitted that agreement to become a part of a judgment quod partitio fiat; and, second, where the tenants have dedicated the land for religious purposes and for sepulture ; the one resting in contract and res adjudicata, and the other upon public policy. A careful reading between the lines in Brown v. Lutheran Church will show that the court were actuated in that case solely by motives of common decency and regard for public morality, motives which must be invoked in vain in the case at bar. But one interpretation can be put upon the following language of the court: " The details which are regulated by the articles indicate an intention to form an abiding union between the congregations, to build the church at their joint expense, and to enjoy the premises as tenants in common. Similar articles were held in Shortz v. Unangst, 3 W. & S. 54, to be within the recording acts as title to land, and we have no difficulty in pronouncing the plaintiffs here entitled, by virtue of the articles of 1819, to such an interest in the premises as would sustain the action of partition."

4. The right of alienation is an incident of ownership; a sale is frequently the best method of executing the trust: Burton's App., 57 Pa. 218. And if we are "entitled to such an interest in the premises as would support the action of partition," then we are entitled to a decree as a matter of right and a court of equity cannot dismiss our cause at discretion: Wisely v. Findlay, 3 Rand. 363 (15 Amer. D. 712); Freeman on Co-tenancy and Partition, § 424 n.; Cartwright v. Pultney, 2 Atk. 380. The weight of authority is overwhelming against the extension of the doctrine of Coleman v. Coleman and Brown v. Lutheran Congregation, beyond the narrow limits within which they proceed.

*Mr. S. P. Boyer*, for the appellees:

The master, justified by the testimony of many witnesses, has found that the property in dispute was purchased for a parsonage for the use of the minister in charge of the five congregations composing the Mahanoy Ministerial Charge.

1. " When property, real or personal, is vested in a religious society, whether incorporated or not, as a church or congregation for the worship of Almighty God, and the promotion of piety and godly living, it is a charitable use, whether the donors be one or many. The corporation or society are trustees, and can no more divert the property from the use to which it was originally dedicated than any other trustee can. If they should undertake to divert the funds, equity will raise some other trustee to administer them and apply them according to the intention of the original donors or subscribers: " Schnorr's App., 67 Pa. 138. Thus it will be seen, that the master was right in holding as a matter of law that the property could not be parted by partition, because four full congregations and churches, and the minority of the members of the fifth, adhere to the original intention of the donors: Ramsey's App., 88 Pa. 60; Sutter v. Ref. Dutch Church, 42 Pa. 503; Winebrenner v. Colder, 43 Pa. 244; Roshi's App., 69 Pa. 462.

2. The appellants argue that the property in question was the subject of partition, and cite cases, a close examination of which will convince any one open to conviction, that they are not applicable to the case at bar. In a contract parties make their own law, provided the contract is not in conflict with any

fundamental rule of law. The case at bar is nothing more nor less than an ordinary contract, such as is daily made between man and man; and that contract was that the churches or congregations, would jointly purchase the property in question for a parsonage for the officiating minister of the Mahanoy Ministerial Charge. By this we understand is meant, so long as the charge is in existence.

OPINION, MR. CHIEF JUSTICE GORDON:

Whilst it may be admitted that partition is an incident of tenancies in common, a right which vests in the several tenants by virtue of the title by which they hold, yet, like every other mere legal right of which persons may be possessed, it may be waived by the contract of the parties. Partners may purchase land for the use of the partnership, and take title thereto as tenants in common, and yet, during the continuance of the firm, it would, I suppose, hardly be contended that one of the partners might avoid his contract by compelling partition. In such case, this right is suspended during the continuance of the partnership, because the waiver of that right must be regarded as part and parcel of the consideration which induced the purchase. The land is bought for a special use, and as long as the necessity for that use continues, it cannot be destroyed by the act of either tenant without the consent of his co-tenant.

A better illustration of the principle here stated could not be had than that found in the case of Coleman v. Coleman, 19 Pa. 100; for here under an agreement that "the ore banks belonging to Cornwall Furnace shall remain together and undivided as a tenancy in common," partition was not permitted at the instance of one of the owners, during the continuance of the conditions which entered into the consideration of the contract. It is true, the learned justice who delivered the opinion of this court said, that this agreement was incorporated into the decree of the partition that had been previously made of the balance of the estate in pursuance of the contract. This, however, was a mistake; though, undoubtedly, part of the consideration for that decree, as between the parties to it, was the stipulation referred to. The commissioners, who were empowered to make partition, reported inter alia as follows:

" And we do further report, that the tract of land called Bingham's Place, at Conewaga, together with a small tract of fifty acres of land adjoining thereto, and also the ore banks and mine hills of Cornwall Furnace, do still remain undivided, to be held by the said Curtis Grubb, Robert Coleman, Burd Grubb and Henry Bates Grubb, as tenants in common, according to their respective shares, and to the covenants and articles in said agreement hereinafter recited contained." It is thus apparent that the fifty acre tract and the ore banks were carefully excluded from the partition; were to remain undivided and to be left subject to the recited contract, and clearly the decree could not embrace lands so excluded, neither could it add force to the agreement under which the parties were acting. We repeat, therefore, that this case perfectly illustrates the principle stated; that is, where parties devote land to a particular use, which use enters into the consideration of the contract creating it, one of the tenants in common cannot, without the consent of his co-tenants, defeat the joint purpose by a writ of partition.

The same rule applies, and perhaps a fortiori, to charities. Here, again, a case in point is found in Brown v. The Lutheran Church, 23 Pa 495, wherein we held, that a church and burial ground belonging to two distinct religious congregations, as tenants in common, under articles of association in which it was recited that they had resolved to erect jointly a house for the worship of God on "a lot which had been purchased by both congregations, and appropriated for that purpose," and in which it was also inter alia provided "that the members of both congregations shall have an equal right and interest in the church and land belonging to the same," were not within the purview of our statutes relating to partition, and therefore neither of those congregations could avail itself of that right without the assent of the other. The counsel for the appellants have endeavored to weaken the force of this case as a precedent by dwelling on the language of the learned justice deprecatory of the desecration of a grave-yard, and disturbance of the bones of the dead, and thereby assuming that had a cemetery not been involved in the contention, the result would have been different. But with this construction of the case we cannot agree, for a careful examination of the point

decided will show that, excluding all immaterial dicta, it was held that the use, a charitable one, could not be destroyed in this manner at the instance of either party.

In view of the legal principle above stated, we have no difficulty in coming to the conclusion that the decree of the court below was correct. The property in controversy was, by the five congregations, purchased for and devoted to a charitable use, to wit, a parsonage and glebe for the common benefit of all jointly. This appears by the deed itself, wherein it is set forth: "Which several named Lutheran congregations form the Mahanoy Lutheran Ministerial Charge of said county of Northumberland." And though by that instrument the special use does not appear, it is abundantly shown by the oral evidence. Here then is a property vested in trustees for the use of "The Ministerial Charge," composed of the several churches therein named; and we may well ask, by what right does one of these churches assume to destroy that trust through the instrumentality of the writ of partition? Not, indeed, on the ground that St. Peter's Church refused the services of the pastor who served the other churches, for this was its own act, and could give it no new right in the premises, but solely on the ground that St. Peter's being a tenant in common, its right to partition is necessarily incident to its title. But, as we have already shown, even admitting the premise assumed, the conclusion is not sound, for, on all authority, this right may be waived by agreement, express or implied, of the tenants in common.

But at best these churches, as churches, have but a qualified fee. Ordinarily, we agree, that when a deed is made to trustees for a church or other charity, the fee vests at once in the association; for, the trust being raised only for the purpose of taking and passing title, it is immediately executed in the cestui que trust. But it is not so when the trust is active and continuing, as where it is created for the support of a special use. In the case in hand, the deed is to trustees for the benefit of a ministerial charge, and it is clear that the fee must remain in those trustees as long as that charge continues, and it is only after the use is extinguished that the unqualified fee can vest in the cestuis que use, and then only in those that survive the trust. Thus it is that, from whatever point we may

view the controversy in hand, it is obvious that the plaintiff's bill cannot be sustained.

Decree affirmed and appeal dismissed, at costs of appellants.