## Chapin v. Bond et al.

*Equity — Partition — Contract — Rescission*—"*He who comes into equity must come with clean hands.*"

1. Where one of the parties to an executory contract seeks to repudiate the same by means of a bill in equity for partition of real estate bought in furtherance of the purpose for which the contract was made, the plaintiff must come into court with clean hands.

2. Where land purchased is devoted by the owners to a particular use, which use entered into the consideration of the contract by which it was created, one of the tenants in common cannot defeat the joint purpose by partition without the consent of the others.

3. Where it appears that the plaintiff, seeking to repudiate her contract, will profit financially by so doing, and that it will be impossible to restore the defendants to the position they occupied before the execution of the contract, a court of equity will not decree the rescission of the contract and partition of the property.

Bill for partition. C. P. Columbia Co., Sept. T., 1922, No. 6, in Equity.

*R. O. Brockway* and *G. J. Clark*, for plaintiff.

*H. Mont. Smith*, for defendants.

POTTER, P. J., 17th judicial district, specially presiding, Jan. 8, 1924.—From the pleadings and the evidence submitted we arrive at the

### Following facts.

1. That the defendants, A. L. Bond and Sarah E. Bond, are husband and wife, aged eighty and eighty-three years, respectively, and the plaintiff, Mary E. Chapin, aged seventy-eight years, is a sister of A. L. Bond.

2. That on Oct. 30, 1920, the plaintiff and the defendants joined in the purchase of a home and lot of ground in Fishing Creek Township under a mutual understanding and agreement that said property should be held, used and enjoyed by the plaintiff and the defendants jointly as a home during the balance of their natural lives and should not be sold during the lifetime of Elsie Bomboy.

3. That, in further pursuance of the joint purpose for which said house and lot was purchased, the plaintiff and the defendants joined in making a contract in writing with Hannah Elsie Bomboy under date of Sept. 10, 1921 (a copy of which is found on page 10 of the notes of testimony), wherein she agreed to devote her entire time and energy to the care and comfort of said plaintiff and the said defendants during their remaining days, in consideration of which she was to have the said house and lot, and the same was not to be disposed of during her lifetime.

4. That, in further pursuance of said agreement, the defendants abandoned their home at Dorranceton, Luzerne County, Pennsylvania, and contributed the one-half of the purchase price of the said property, expended $110 in improvements and repairs, with the said plaintiff entered into the said agreement with Hannah Elsie Bomboy and moved upon and into the premises.

5. That the defendants, to wit, A. L. Bond and Sarah E. Bond, in all respects fully performed and carried out their obligations under the original contract and agreement made with the plaintiff at the time of the purchase of said property.

6. That the said Hannah Elsie Bomboy has, since the execution of the said contract of Sept. 10, 1921, resided on the said real estate and has rendered to the said plaintiff and to the said defendants the services mentioned and contemplated by said agreement, and has at all times held herself in readiness to render such services to the said plaintiff and to the said defendants as are provided and contemplated by said contract.

7. That the plaintiff, Mary E. Chapin, on Sept. 14, 1921, four days after the execution of the contract of Sept. 10, 1921, with Hannah Elsie Bomboy, left their joint home and gave to one of the defendants, viz., A. L. Bond, as her reason for leaving, that she had a contract to work for a man by the name of Shuck, and that under the terms of her contract with him she would receive $500 in cash over and above her wages if she would remain with him during his lifetime, and that he had written her that if she would come back to him this contract would not be considered broken, she having been working for him under this same contract before she moved in with the defendants into their joint home.

8. That the relations between the plaintiff and the defendants during their joint occupancy of their home were at all times cordial, and that, so far as her treatment was concerned, there was no sufficient reason to justify her in leaving them on Sept. 14, 1921, or at any other time.

9. That it is undisputed that the real estate in question was purchased for the sole purpose of furnishing a joint home for the said plaintiff and the said defendants during their lifetime and the lifetime of the survivor of them, and that, in pursuance of said purpose, said real estate was actually devoted to such use.

10. That on or about Aug. 13, 1921, the plaintiff went to live with the defendants with a view of making her home with them and to thereafter live with them as one family in one joint home.

11. That on Sept. 10, 1921, the plaintiff and the defendants, with Mrs. Hannah Elsie Bomboy, executed an agreement in writing, as set forth as "Exhibit A" in the answer filed in this case.

12. After the execution of said agreement there was no change in the financial conditions of the parties to it.

13. On Sept. 14, 1921, the plaintiff left the said home under circumstances, as she said, indicating dissatisfaction. A week later, on Sept. 19th or thereabouts, she wrote a letter to Mrs. Bomboy, asking that her personal effects be

Chapin *v.* Bond et al.

packed for removal and stating that she would soon come for them. Mrs. Bomboy packed her goods, consisting chiefly of carpets, bedding, clothing, &c., as requested, and was paid by Mrs. Chapin, the plaintiff, the sum of $2 for this work.

14. On Sept. 24, 1921, the plaintiff went to the property jointly owned by her and the defendants and removed her personal effects, paying Mrs. Bomboy for packing them, and has not returned there to live and states that she never will.

15. On Sept. 24, 1921, the plaintiff served on the defendants, including Mrs. Bomboy, a written notice, declaring her dissatisfaction with treatment pursuant to and under the contract of Sept. 10, 1921, declaring she would no longer be bound thereby and would not carry out the same.

16. That, after Mrs. Chapin left their said home on Sept. 14, 1921, the defendants made no effort by letter or personally to ascertain the cause or grounds of her dissatisfaction. On receipt of her written notice, wherein she proposed to abrogate the contract of Sept. 10, 1921, the defendants made no change in their circumstances, arrangements or conditions.

### Discussion.

In this case we have the sorry spectacle of at least three of the four persons involved, standing on the threshold of eternity, becoming involved in a family quarrel, the plaintiff being a sister of A. L. Bond, one of the defendants.

These two defendants, viz., A. L. Bond and Sarah E. Bond, aged eighty and eighty-three years, respectively, had resided in Dorranceton, and the plaintiff, aged seventy-eight years, had resided with a Mr. Shuck at Forty Fort. These two, brother and sister, recognizing their advance in years, for several years back have been attempting to arrange for the purchase of a small home in the country with several acres of land attached. They finally found the place they wished for at Bendertown, in Fishing Creek Township, and purchased the place for $900, the plaintiff paying the one-half of this sum and the defendant paying the other half, the title being made out in the names of the plaintiff and the defendants by a deed dated Oct. 30, 1920, it having been the distinct agreement and understanding by and between these three people that the small property was to be a home for them and for each of them during their lives.

It seems that Mrs. Hannah Elsie Bomboy, a daughter of Sarah E. Bond by a former husband, had been keeping house for these two defendants for some time, and she remained with them and came with them to their new home herein mentioned when they moved into it on Nov. 16, 1920, bringing their household goods and other personal possessions along with them, as well as some of the goods of the plaintiff. The plaintiff continued to reside with Mr. Shuck for a time, and in July, 1921, she went to their home, remaining there three days. On Aug. 13, 1921, she again went to their joint home with the intention of staying, as was the original purpose in its purchase, taking her remaining belongings with her.

On Sept. 10, 1921, the plaintiff and the two defendants entered into the following agreement with Mrs. Hannah Elsie Bomboy, to wit:

"This agreement, made the tenth day of September, Nineteen Hundred and Twenty One.

"Between—Abraham L. Bond, his wife Sarah E. Bond and his sister Mrs. Mary E. Chapin of Benderville, Columbia County, Pennsylvania, as parties of the first part, and Mrs. Hannah Elsie Bomboy, daughter of Mrs. Sarah E. Bond, party of the second part.

Chapin *v.* Bond et al.

"In consideration of the faithful care during the remaining lifetime of each and all of the parties of the first, by the party of the second part, it is understood and agreed that the party of the second part, Mrs. Hannah Elsie Bomboy, is to have for her services the real estate owned jointly by the parties of the first part, situate at Bendertown, Columbia County and State of Pennsylvania, formerly owned by John McMichael, consisting of two acres of land, more or less, improved with a one and one half story frame dwelling house, barn, outbuildings and contents.

"The parties of the first part further agree not to dispose of the above named property during the lifetime of the party of the second part.

"The parties of the second part agrees to devote her entire time and energy to the care and comfort of the parties of the first part during their remaining days.

"In witness whereof we have hereunto set our hands and seals this 10th day of September in the year of our Lord one Thousand Nine Hundred and Twenty One.                    ABRAHAM L. BOUND      Seal

    Amos Wenner              X  SARAH E. BOUND       Seal
    John Hazlett                MARY E. CHAPIN      Seal
    Witnesses.               X  HANNA ELSIE BOMBOY   Seal"

(By way of explanation, we might add that the names Bound and Bond, as used in relation to these defendants, mean the same persons.)

The plaintiff was a member of this joint family just one month, and on Sept. 14, 1921, just four days after the execution of the above joint agreement, she left to go back to live again with Mr. Shuck, he sending a man with a car to move her and her goods back to his home.

On Sept. 19, 1921, the plaintiff, from the home of Mr. Shuck, wrote and mailed to Mrs. Bomboy the following letter:

"Forty Fort, September 19—1921.
"Dear Ellie:—

"I arrived home safe & sound we got here at ½ past 4 I wasent very tired how are you all now Ellie I am coming down with a truck to get the rest of my things & I would like to have you pack them the best you can & I will pay you for your work I want my rag carpet & feather bed & pillows and all that belongs to me in the house I did not find Pa Chapin's nor David's picture in my things here.  Please remember them and my post card album.  I want the nives & forks & bone dishes you are using it is a good ways to come so have them as near ready as you can I will come along but will not stay only long enough to get loaded I will be there some day when the weather is good before it gets cold is Deny with you yet did you get over to Ethels for a visit now I will close hoping you will have the carpet up & save trouble after I get my things I'll not bother you any more I will close wishing you all the good luck in the world.                              From
                                           Mrs. J. W. CHAPIN

"P. S.  Write & tell me when you can my things ready.  M."

On Sept. 29, 1921, she again came to this joint home to remove the balance of her possessions, and, after loading her property for conveyance, as she was ready to leave, she handed each of the two defendants and to Mrs. Bomboy a notice, of which the following is a copy:

"To Abraham L. Bound, Sarah E. Bound, Hannah Elsie Bomboy:

"Take notice.

"On 10th September, 1921, I signed an agreement with you providing for my care for the remainder of my life together with that of Abraham L. Bound

and Sarah E. Bound, which care was to be at our joint home at Benderville, Columbia County, Pa. As soon as said agreement was signed you began and continued a course of ill treatment, misuse and abuse towards me making it impossible to continue to live with you and in consequence I went away from our said home on 14th September 1921 and will not return.

"This is to notify you that you have failed to perform your part of the agreement and that I refuse to be bound in any way.

"I further notify you that you are not to make any improvements or repairs or incur any expense on said property so far as my interest therein is concerned. I hereby expressly revoke any and all agreements I may have made or agreed to make regarding the said property and demand my half interest therein without charge, cost or expense.

MARY E. CHAPIN

"September 24th, 1921.    No. 44 Fort Street, Forty Fort, Pa."

Endorsed: "On September 29th 1921 I served the within notice personally on Abraham L. Bound, Sarah Bound and Hannah Elsie Bomboy, within named, at Bendertown, by handing to each of them a true copy of the same in the presence of Gordon Shook and Ray Thomas.

MARY E. CHAPIN."

We cannot help observing at this juncture the difference in the composition of the letter of Sept. 19, 1921, and this notice. We believe the plaintiff did write the said letter, but some one other than she wrote the notice. She apparently went in hot haste to consult counsel, even before she knew whether or not she needed any, and then the notice appeared. Had she been as eager to effect a reconciliation with her brother and his wife as she was to secure counsel, this suit would never have been brought into court, and all their difficulties would have been settled in the family, as they should have been, if indeed any at all existed.

The plaintiff then left this joint home, and she acknowledges it to have been such, and says she will never go back to it. After jointly purchasing this home, after jointly paying for it, and after the joint execution of the agreement with Hannah Elsie Bomboy, she now attempts to repudiate the whole transaction and says she will not be bound by it. In order to do this successfully, she must be blameless and the fault of her attempted repudiation must all rest with the defendants. She is the plaintiff in this suit, and the familiar principle as laid down by a long line of decisions is that she must come into court with clean hands, which means that the fault must all lie with the defendants.

Is this the case, or is it not? On this question, in our judgment, rests the ultimate result of this suit. If the defendants misused or abused her or in other respects did not live up to the agreement as entered into by them, then the agreement would be broken by them and the plaintiff would be released from its covenants. If, however, she has been induced to go back again to live with Mr. Shuck, and has seized upon the matters she complains of as pretexts, or if she has been the inducing cause of any friction between herself and these defendants, then she cannot profit by her own wrong and breach this agreement. She claims she became dissatisfied with the treatment she received at the hands of the defendants and Mrs. Bomboy, that she complained about it to her brother. She, at the request of the court, detailed several instances wherein Mrs. Bomboy abused her, as she claims. This alleged abuse is most emphatically denied by Mrs. Bomboy, by A. L. Bond and by Sarah E. Bond. These three are unanimous in saying that the four of them,

while the plaintiff was with them, had no trouble whatever and got on very well together. So far as having trouble among themselves is concerned, the testimony of this plaintiff stands alone and is contradicted by the other three, and the burden lies with this plaintiff to make out her case. Her letter of Sept. 19th to Mrs. Bomboy does not in the least indicate any feeling against these three defendants. In fact, the letter does tend to establish the most friendly feeling as existing between these two contending parties.

It developed in the testimony that the plaintiff had lived with Mr. Shuck for fourteen years, and that there was a contract between them that, in case she stayed with him up to the time of his death, she was to receive the sum of $500 over and above her wages. If she remained a member of this joint family, the contract between her and Mr. Shuck was at an end, and the $500 would vanish in thin air; but if she went back to him and left this joint family she had helped to establish, this contract would spring into life again from its own ashes, like the Phœnix of old. Would this be an incentive to move her to again desire to take up her former relations in the household of Mr. Shuck?

From the testimony given by her on the witness-stand, her language used and her manner of testifying, we are led to conclusively believe there was some ill-feeling on her part towards the other three members of this quartet, and it was quite noticeable that the other three manifested no ill-feeling whatever towards her, but spoke of her in the most respectful terms.

On Sept. 10, 1921, she, with the two defendants, executed the agreement with Mrs. Bomboy, which surely indicated her complete satisfaction with all the arrangements up to and including that time. Had she been dissatisfied, she would hardly have placed further obligations upon herself, as is provided by this agreement. And, strange to say, four days after the execution of this agreement she leaves for good. Then, on Sept. 19th, she writes a letter to Mrs. Bomboy, wherein she addresses her as "Dear Ellie," when at the same time she claims it was because of the abuse of this same "Dear Ellie" that she left their joint home. This letter contains nothing that would lead us to believe that anything but the best of feeling existed between these two contending parties. And then, on Sept. 29th, comes a notice from her to the other three members of this joint family, whereby she attempts to make void and nugatory any and all bargains, contracts or agreements heretofore entered into by her with the defendants.

We are firmly of the opinion that this she cannot do. Solemn contracts are not so easily set aside, especially so when the parties cannot be placed again in their original positions they occupied before the execution of the contract, this being an executed contract. By reason of their agreement with her these defendants broke up their home at Dorranceton. A. L. Bond gave up his position or employment there and they invested nearly all their substance in this small property and moved their few belongings to their new joint home with the expectation of making it their permanent abiding place for their few remaining days on earth. They surely cannot be placed in the same position they occupied before the execution of this transaction. The plaintiff is back in her old position and has a home for life. Not so with these two aged defendants. She apparently has more money to fall back upon in case of adversity. Not so with these two defendants, it being shown that they have invested nearly all they have in this joint home, and they could not buy a larger tract of land because they did not have the necessary funds with which to pay their half. So that upon the agreement made between the plaintiff and the defendants, they, expecting the conditions of it to be fully realized by all

of them, invested nearly all of their substance, broke up their former home and moved upon the premises.

We do not think there was any sufficient cause for the plaintiff to attempt to rescind her solemn contracts. This was not to be a "try out" nor an experiment. It was a stern reality, a business proposition which each party had a right to expect the other would faithfully perform. We are inclined to the opinion that the permanent home with Mr. Shuck and the $500 "bonus" is the prime cause of all this trouble, and that the plaintiff, wishing to break away from her contract with the defendants, cast around to find some excuse for so doing, when in fact there was none.

We must hold that the plaintiff and the defendants were tenants in common for a special purpose, and we must hold that the old maxim that "where land purchased is devoted by the owners to a particular use, which use entered into the consideration of the contract by which it was created, one of the tenants in common cannot defeat the joint purpose by partition with the consent of the other:" Trickett on Partition, 255 and 346; Coleman v. Coleman, 19 Pa. 100; Latshaw's Appeal, 122 Pa. 142. To the same effect is Brown v. Lutheran Church, 23 Pa. 495; Swoyer v. Schaeffer, 13 Pa. C. C. Reps. 346; Etters v. Musser, 241 Pa. 237.

In the case of Swoyer v. Schaeffer, 13 Pa. C. C. Reps. 346, Judge Endlich says: "In either event, an application by one of them, without the concurrence of the other, to have the estate partitioned, so as to restrict the right of each to enjoy a portion of it in severalty, or to have it sold, so as to entirely defeat the right of one, perhaps both of them, to the enjoyment of any part of it, is an application which has no equity to commend it to a chancellor."

To award a partition of this property in question would defeat the original purpose for which it was purchased and would work a hardship on at least one of the parties. We do not see how this can be legally done. We are, therefore, led to the following

## Conclusions of law.

1. That the plaintiff and the defendants having, at the time of the purchase of the land in question, mutually devoted the same to a particular use, namely, to be used as a joint home during the lives of them and the survivor of them, which use entered into the consideration of their original contract, Mary E. Chapin, the plaintiff, cannot now defeat the said joint purpose by partition without the consent of her co-tenants.

2. That the said Hannah Elsie Bomboy having, immediately upon the execution of the contract of Sept. 10, 1921 (see Exhibit A), entered upon the performance of the services contemplated by said agreement, and having continued to render said services upon the premises and being ready and willing at all times so to do, now has a vested interest in said premises which cannot be defeated by a partition at the instance of one of the parties to said agreement.

3. That the clause in the contract of Sept. 10, 1921 (see Exhibit A), to wit, "The parties of the first part further agree not to dispose of the above named property during the lifetime of the party of the second part," constituted a covenant binding alike upon the plaintiff and upon the defendants which operates as a bar to any disposal of said property by partition or otherwise, unless by the consent of all parties concerned.

4. That the plaintiff's written notice of Sept. 24, 1921, was ineffective to abrogate the original contract and to defeat the right of the defendants to

the enjoyment of the property for the purpose for which it was purchased, namely, as a home for their natural lives.

5. That the plaintiff has failed to show any such right, title or interest in said real estate as entitles her to have partition thereof, or to have an accounting for the rents, issues and profits therefrom.

6. That this bill must be dismissed, at the costs of the plaintiff.

And now, to wit, Jan. 8, 1924, in accordance with the views herein expressed, the bill is dismissed, at the costs of the plaintiff.

From R. S. Hemingway, Bloomsburg, Pa.