451 A.2d 530

Theodore FUHRMAN

v.

Stuart DOLL, Donald E. Wolfgang, Tom K. Doll, Walter Everhart, Richard Everhart, Scott Everhart, Lloyd Kauffman, Ray Sollenberger, Donale E. Wolfgang, Howard D. Hess, Jr., Charles Witmer and Jay Kirchner, Appellants.

Superior Court of Pennsylvania.

Argued Jan. 7, 1982.

Filed Oct. 8, 1982.

278

Daniel W. Shoemaker, York, for appellants.

No appearance entered nor briefs submitted on behalf of appellee.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

CAVANAUGH, Judge:

This is an appeal from an order of partition entered by the court in Tioga County.

## HISTORY OF THE CASE

In 1958 a group of men from York County desired to purchase a hunting camp in Tioga County. When they did so they took title in the names of three of their members "as Trustees for 'North York Club'". The club had a constitution and by-laws which fixed "the value of said membership" at $200.00. This was later changed to $300.00. In 1974 the club took advantage of an opportunity to purchase an adjoining tract of land, this time taking title in the name of twelve named members as "Trustees for 'North York Club'". At the same time the three named grantees of the original parcel of land conveyed that parcel to the same twelve and in the same capacity. The twelve grantees included the three "trustee" grantors. Appellee, Theodore Fuhrman, was one of the originators of the club and was one of the twelve grantees in the two 1974 deeds. In 1978 Fuhrman was given notice of his termination from the club and was tendered a check in the sum of $300.00 for the value of his membership.

Fuhrman instituted the present suit in which he sought partition of the real estate. Trial was held before Judge Kemp who decreed that the property was subject to partition. After consideration of exceptions to the decree the court concluded as a matter of law that the twelve grantees in the two deeds were tenants in common and reaffirmed its order of partition. The court further concluded that Fuhrman "is a member of the North York Club, the attempted expulsion from membership being without due process and pursuant to adopted rules and regulations of the by laws".

On appeal we do not have the benefit of a brief on behalf of appellee. We have therefore examined the complaint and the record to determine the nature of appellee's claim. In so doing we find that Fuhrman in his complaint sought only the remedy of partition. The issues were not framed, nor was the evidence directed to the general issue of the propriety of Mr. Fuhrman's expulsion from the North York Club. Moreover, the appellee testified that he did not seek rein-

statement as a member. The only question before the Court was whether or not the appellee was entitled to partition.

## DISCUSSION

■ Resolution of the question of entitlement to partition does not simply depend upon whether the ownership of land is as joint tenants or tenants in common, for under Pennsylvania law in proper circumstances property held in either designation may be partitioned. *See Larendon Estate,* 439 Pa. 535, 266 A.2d 763 (1970); *Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975); 28 P.L.E. Partition § 22–24; Ladner on Conveyancing in Pennsylvania, Revised Fourth Edition (1979) § 1.06.

■ Even property held as tenants by the entireties may be partitioned if there has been conduct on the part of one owner which amounts to an offer to terminate the entireties relationship. *See Stemniski v. Stemniski,* 403 Pa. 38, 169 A.2d 51 (1961); *Lindenfelser v. Lindenfelser,* 396 Pa. 530, 153 A.2d 901 (1959); *DeLuca v. DeLuca,* 388 Pa. 167, 130 A.2d 179 (1957).

Nor do we think that the proper analysis in this case is whether or not the property in Tioga County was held in trust by the named grantees. We recognize that many cases deal with the distinction between active and inactive (dry) trusts and hold that if there is an active trust with continuing duties there may be no partition of the title. *Ewalt v. Davenhill,* 257 Pa. 385, 101 A. 756 (1917); *Johnson v. Gaul,* 228 Pa. 75, 77 A. 399 (1910); *Hutchison's Appeal,* 82 Pa. 509 (1876); *Owens v. Naughton,* 23 Pa.Super. 639 (1903). Here, however, while the members held the title to the real estate as "trustees for 'North York Club' ", the plain fact is that the North York Club is an unincorporated association and as such it could not hold title to real estate in the name of the organization. *Ladner, supra,* § 3.10. While the taking of title in the names of individuals as "Trustees" for the North York Club may or may not create a valid legal trust, it, together with the constitution and by-laws makes it apparent that the property was held by the named grantees for

the benefit of the present and future membership of the club and was not meant to convey to each grantee all of the rights and incidents of a tenancy in common or a joint tenancy.

The North York Club had a constitution and by-laws which controlled the membership and provided for usage of the Tioga County camp by the club members during the deer season and at other times. It also provided for payment of a certain sum upon death or resignation from the club. Testimony at trial showed that of the twelve named in the deed only seven were still members at the time of trial. An examination of the 1974 deed from the three trustees to the twelve trustees is further evidence of the intention of the members of the club. The deed provides:

> The Trustees of the North York Club are authorized and empowered by the by-laws of the North York Club to convey, sell, transfer, rent, release or transact in the property description hereinbefore, provided all the members of the North York Club consent in writing to the action of the trustees.

It is evident that the membership used the "as trustees" terminology in taking title to the club property simply as a convenient designation to express their intent that the property was being held for the benefit of the entire membership and that they were not concerned with the complexities of trust law. The club was formed in 1958 by a group of men who were raised together and desired to have a hunting camp for the benefit of the membership. The members met on a regular basis and would, on occasion, go to the camp to do work. The membership changed from time to time. The by-laws regulated the usage of the camp including a provision for safety rules.

The history of the club, the changes in membership without alteration of the club structure, and the conduct of the affairs of the club lead us to conclude that it is intended that the continued operation and ownership of the camp in Tioga County should not be subject to termination by reason of the will of a single member.

■ An agreement limiting the right to partition need not be express; it may be implied from the circumstances in which the property was acquired or is held. *Shoup v. Shoup,* 469 Pa. 165, 170, 364 A.2d 1319, 1323 (1976). As early as *Brown v. Lutheran Church,* 23 Pa. 495 (1854), our Supreme Court found from the circumstances of the joint ownership of a church and burial grounds by separate religious congregations that an order to partition the real estate was not appropriate.[1] This principle received further recognition in *Latshaw's Appeal,* 122 Pa. 142, 153, 15 A. 676 (1888): ". . . . as we have already shown, even admitting the premise assumed, the conclusion is not sound, for, on all authority, this right [partition] may be waived by agreement, express or implied, of the tenants in common." *See also* 37 A.L.R. 3rd 962; *Duffy v. Duffy,* 81 D & C 366 (1951).

Cases dealing with the rights of club members to assert a direct interest in real estate owned by the association also demonstrate that the test to be applied is the intention of the parties as expressed in their agreements, constitutions or rules. *See Nesbitt v. Litz Hunting Club,* 24 D & C 2d 706 (1960) (membership in organization held not to include right to transfer ownership to another); *Dutrow v. Bohn,* 15 D & C 2d 779 (1958) (evidence indicated that members were treated as having transferable interest in club assets. There was no constitution or by-laws and "[H]ence a court may consider the manner in which the numbers treated or disposed of their interests in the property as showing their construction and understanding of their respective rights therein". 15 D & C 2d at 781. Court concluded that each member was considered as having an equal and undivided interest in the leasehold. Partition granted).

1. Justice Woodward, speaking for the court with a wisdom that belongs to the ages, added:
"Whether there be any other remedy at law for the differences of these tenants in common, it is not our duty to inquire, but it may not be amiss to suggest that they can agree on terms of separation, and settle their difficulties among themselves far more advantageously than the law can do it for them."
23 Pa. at 501.

We believe that in this case the court erred in entering an order granting partition. An examination of the evidence including the deeds, by-laws and constitution and, importantly, the actions of the club members in dealing with each other and the club's property at the inception of the association and during its existence, leads us to conclude that there is an implied prohibition against partition at the request of one of the members whose name appears on the deed.

Since this was a suit in partition only, our order is that the decree directing partition be reversed. We make no disposition as to the appellee's rights, if any, as against the members of the North York Club or its assets.

Order reversed.