## Brown *versus* Lutheran Church.

1. Trustees of real estate for religious purposes, holding in trust for erecting a school-house and a church thereon, and for a burying ground, could not create a new use, or convey the estate for purposes inconsistent with those for which they held it.

2. But it was competent for the *cestuis que trust* to ratify and confirm the act of the trustees in making such a conveyance.

3. A grant to *the members* of an unincorporated religious society where the purpose is to promote the charity for which the society was organized, is, in Pennsylvania, a grant to the society itself.

4. A church and burial ground held by two distinct religious societies as tenants in common, under articles of association looking to a permanent union, are not within the provisions of our statutes relating to partition and are not the subject of partition.

5. The same is the case with respect to the portion of the burial ground not yet used for the purpose of burial:—and especially, as the partition of *the whole* property was demanded in the writ, the judgment of the Court refusing partition should be affirmed.

ERROR to the Common Pleas of *Union county*.

This was an action of partition in the name of George Brown, trustee of the German Reformed Congregation, worshipping in St. Peter's Church, Kelly township, Union county, *v.* The Evangelical Lutheran Church and Congregation, worshipping in the same church, and attached to the West Pennsylvania Synod.   Plea, *non tenent insimul*.

[Brown *v.* Lutheran Church.]

On the 30th August, 1802, there was conveyed to Christian Zerbe and George Renninger, above seven acres of land, then in White Deer township, now Kelly township, Union county, for the consideration of £20.14, "in trust to and for the use of building or erecting a school-house and a German Lutheran Church on the same, and a burying ground."

On the 24th November, 1815, Zerbe and Renninger executed a deed, in which it was recited that "the members of the Presbyterian Reformed Congregation have contributed towards purchasing the aforesaid piece or parcel of land, and willing to contribute towards building a church;" therefore, in consideration of the sums of money contributed as aforesaid, and to be contributed towards building a church, they have "granted, permitted, allowed, and confirmed the full rights, liberty, and privilege, *unto the members* of the said Presbyterian *or* Reformed Congregation, in common with *the members* of the Lutheran Congregation, of, in, and to the aforesaid premises and church, when built."

It was stated in evidence that the school-house was constructed soon after the purchase of the lot, in the construction of which members of both congregations united.

Articles of association, dated the 15th of May, 1819, were entered into by members of the two congregations, in which it was, *inter alia*, stated that they had resolved to erect jointly a house for the worship of God, "on a lot which has been purchased by both congregations, and appropriated for that purpose." In one of the articles it was provided that "the members of both congregations shall have an equal right and interest in the church and land belonging to the same;" in another, that "the members of both congregations shall have their time of worship alternately," &c.; and in the seventh article it was, *inter alia*, provided, that each one that will be a member of the church, shall contribute "towards the erection and keeping in repair of the same, and in consideration for so doing, he and his heirs, with all others, shall have an equal right, share, and claim, in and to said church, the church-yard, and the land belonging to the same."

In the 13th article it was provided that all church furniture, necessary to have, should be purchased jointly, &c., and to be the property of one as much as of the other congregation.

The contributions towards building a church were, by Lutherans, $912; by members of the Reformed congregation, $177; and by strangers, $73.

The premises were used and occupied for a number of years by the two congregations.

In 1846, the Lutheran congregation procured a charter of incorporation. Afterwards this action of partition was brought by the Reformed congregation.

[Brown *v.* Lutheran Church.]

It was alleged that a grave-yard was commenced some time before the written purchase of the land, which has been gradually enlarged, till it occupies nearly an acre, and requires additional enlargement.

It did not appear whether or not the Reformed congregation was concerned in the original purchase of the premises.

WILSON, President Judge, in his charge observed, that so far as the articles of association were confirmatory of the deed from the trustees a title passed, for, without the consent of the Lutheran congregation, the trustees had no power to convey any of their rights and privileges; but he observed that the association was by *the members* of the two congregations, for the purpose of erecting and building, and securing to each contributing *member* and his heirs, a right and claim in the church, &c., and *not to the congregation and its successors.* He therefore charged, that no interest had been shown in the plaintiff, the Reformed congregation, to sustain the action.

But he further charged that the policy of the law forbid the partition of a grave-yard, or a sale under such a proceeding; that the laws authorizing and regulating partition, do not contemplate the partition of property situated as the premises in question.

Verdict was rendered for the defendants.

It was assigned for error that the Court erred, first, in the instruction that the plaintiffs had not such an interest or title in the premises as would sustain partition; second, that the policy of the law forbid the partition of a church or grave-yard; and, third, in directing a verdict for defendants.

*Casey* and *Pollock* were for plaintiffs in error.—It was contended that from the written title exhibited, it was evident that the original purchase was made by and for the use of both congregations and paid for jointly. But that, in addition to such evidence, the plaintiffs below had the conveyance of a legal title ratified by the members of the Lutheran congregation.

It was observed that impossibility of making partition was no legal objection to proceedings in partition; that for the sake of peace and the promotion of justice, the premises may be valued and the right afforded to take them at a fair valuation, paying the other party a fair proportion of it.

It was further observed that this was not the case of *a gift* of land and a dedication to a particular use, but was *a purchase,* and that the trust expressed in the deed was to restrain the power of the trustees rather than control the uses to which it should be applied. The statutes of 13 Henry VIII., Chapter I., *Roberts's Dig.* 218, subjects to compulsory partition any manors, lands,

[Brown *v.* Lutheran Church.]

tenements and hereditaments, within the realm.   The statute 32 Henry VIII., Chapter XXXII., *Roberts's Dig.* 226, uses the same terms.   The Act of 11th April, 1799, Sec. 1, *Purd.* 628, speaks of "lands and tenements."   The Act of 7th April, 1807, *Ibid.* 629, refers to "lands, tenements, or hereditaments."   *Miller on Partition*, page 36, 37, 45, *et seq.*, was referred to.

*Miller* and *Linn*, for defendants in error.—It was contended that if the contract of May, 1819, was a ratification of the deed of the trustees, still that it conveyed a use or privilege and not a fee to the *members* of the congregation, and not to *the congregation.*   In the *narr.* the undivided *half* of the church and land was claimed, whilst members of the Reformed congregation had not contributed one-fourth as much as members of the Lutheran congregation.

The case of Kirk *v.* King, 3 *Barr* 436, was cited to the point that "the employers of a certain school" being unincorporated, were incapable of taking a fee which remained in the grantor. Also cited 2 *W. & Ser.* 81–87.   The case of Coleman *v.* Coleman, 7 *Harris* 100, was referred to on the subject of partition.   A donation to a church cannot be diverted from the use the donor intended.   If a congregation withdraws from a union with another, they can take no property of the congregation with them: 6 *Barr* 201, App *v.* Lutheran Congregation.

The opinion of the Court was delivered by

WOODWARD, J.—The first error assigned is, that the Court erred in deciding that the plaintiffs had not such an interest or title in the premises as would sustain partition.

If the plaintiffs' title rested solely on the deed of 24th November, 1815, it could not be sustained, for the grantors in that deed were trustees under the deed of 30th August, 1802, to hold the premises in "trust to and for the use of building or erecting a school-house and a German Lutheran church on the same, and a burying ground," and although they might assign the trust by force of the terms used in the conveyance to them, they could not create a new use, or convey the estate for purposes inconsistent with those for which they held it.   When, therefore, they granted to the members of the Presbyterian or Reformed congregation equal rights and privileges in said premises with the Lutheran congregation, they exceeded their authority, and attempted a diversion of the trust to objects not contemplated in the deed which created it.

But it was competent for the *cestuis que trust* to ratify and confirm the act of the trustees, and this we think they did on the 15th May, 1819, by the "Articles of Association."   The parties

to these articles were the members of the two congregations, and though not incorporated, they were competent to contract as religious societies. The consideration was in their mutual promises, and the compact gave to the members of each congregation expressly an " equal right and interest in the church and land belonging to the same." The details which are regulated by the articles indicate an intention to form an abiding union between the congregations—to build the church at their joint expense—and to enjoy the premises as tenants in common. Similar articles were held in Shortz v. Unangst, 3 W. & Ser. 54, to be within the recording Acts as title to land, and we have no difficulty in pronouncing the plaintiffs here entitled, by virtue of the articles of 1819, to such an interest in the premises as would sustain the action of partition. The learned judge took a distinction between the *members* of the Reformed congregation and the *congregation* itself, and held that whatever title was transferred by the articles, vested in the former and not in the latter. The title papers, it is true, are to the *members* of both congregations, but the intention was not to vest title in the several individuals composing those congregations, but in the respective societies, which were nothing else than aggregations of these individuals. Under our Acts of Assembly, religious societies have many of the capacities of corporations, and a grant to the members of such a society, where the purpose is to promote the charity for which the society was organized, is a grant to the society itself. The first error, therefore, seems to be well assigned, but still the judgment is not to be reversed, if the Court were right in deciding that the policy of the law forbids the partition of a church or grave-yard, which is the subject of the second assignment.

These unions between different denominations of Christians are proved by all experience to be most unwise. The motives for them in new and thinly settled neighborhoods are obvious and commendable—to furnish those facilities for Christian worship and burial, which each sect of itself is too poor to supply. And there is something attractive in a proposed union of Christian effort and means for a common purpose. It promises the beautiful spectacle of brethren dwelling together in unity, and seems likely to illustrate the affectionate and fraternal spirit of the religion professed; but no matter how solemnly the parties may agree, like those before us, that " everything shall be transacted in love and peace," they always realize in bitter experience the truth implied by the pregnant question, "how can two walk together except they be agreed?" It is no reproach to Christianity that such unions prove impracticable, for it is a jealous and conscientious regard for what is believed to be right—for different forms of the same essential faith—that produces the discord. Dogmas for which we care but little are easily compromised, but what we believe with our whole

[Brown *v*. Lutheran Church.]

hearts we contend for earnestly. And it is because Christianity makes men honest and faithful to their convictions, that they will not surrender either the positive or the formal truths they have received, and hence the impossibility of uniting on common ground those whose only differences consist in the modes of professing a common faith. But what can the law do for parties in such unhappy circumstances? Divide their property, say these plaintiffs. The law of partition in Pennsylvania is adapted to every exigence of tenancies in common; for, if the property cannot be parted without prejudice, it may be put into market and sold, and in general partition is a right of tenants in common. Yet circumstances of their own creation will sometimes induce the Courts to deny them this right, a striking instance of which may be seen in Coleman *v*. Coleman, 7 *Harris* 100. Here we have circumstances essentially different, but equally dissuasive from granting partition. The members of two religious societies, under articles of association which look to a permanent and interminable union, erect a church and establish a burying ground. A whole generation have worshipped in the church, and now sleep in that ground. Their children and successors being unable longer to enjoy the house of worship together, it is proposed to make partition. The Lutheran portion object to this on the ground that they are unable to take the property at a valuation and pay for it, and are unwilling that the altar and the graves of their fathers should be brought to public vendue. We think their objection well grounded and worthy of respect. The *church* could not be divided, and to separate it from the burial places would be not only a species of sacrilege, but would materially impair the value of both parts of the property. The only form in which the partition asked for could be made, would be by a public sale; and what would these graves, of inestimable value to surviving relatives, fetch in market? They would prove a prejudice to the property, and would depreciate its price. And then, in the hands of a purchaser, they would be almost sure of desecration. Pennsylvania, with a refined and elevated sense of what is due to both the dead and the living, has forbidden, by statute, the opening of streets, lanes, alleys, or public roads through any burial ground or cemetery, and has provided a penalty for wilful injuries done to grave-yards—not only to the tombstones and fence-railings, but even to the "shrubs and plants" which bereaved love cultivates in such places. The sentiment is sound, and has the sanction of mankind in all ages, which regards the resting-place of the dead as hallowed ground—not subject to the laws of ordinary property, nor liable to be devoted to common uses. We do but express the concurrence in this sentiment which we feel, when we hold that a church and burial ground situated as these now under consideration, and owned by distinct religious societies as tenants in common, are not within the spirit and meaning of

[Brown *v.* Lutheran Church.]

our statutes of partition, and that the Court were right in denying judgment *quod partitio fiat* to the plaintiffs. Whether there be any other remedy at law for the differences of these tenants in common, it is not our duty to inquire, but it may not be amiss to suggest that they can agree on terms of separation, and settle their difficulties among themselves far more advantageously than the law can do it for them.

Something was said about partition of that portion of the graveyard not yet occupied with graves. There are 7 acres and 91 perches in the whole lot—not more than is usual and proper in grave-yards—and it is said that the part hitherto used for burying is filled up, and a portion of the remainder of the lot will be immediately required for the purpose. What is not so used belongs properly to the church as a glebe, and ought not to be separated from it. Beside all this, the writ demands partition of the whole property, not of the unoccupied part of the grave-yard, and considering that the judgment was right, it is affirmed.