OSCAR BERRY,

*vs.*

EDWARD ABBOTT and MINNIE E. ABBOTT.

*Kent, Nov. 5, 1927.*

450

Harrington, J., sitting.

*Thomas C. Frame, Jr.*, for petitioner.

*Henry Ridgely*, for respondents.

Harrington, J., delivering the opinion of the Court:

The question is whether the cemetery lot described in the petition shall be partitioned.

*Chapter* 95, *Revised Code* 1915, provides for the partition of lands and tenements held by tenants in common. (*Ex parte Burgess*, 1 *Del. Ch.* 233.)

*Section* 3274 of that chapter also provides that if, upon the return of a summons in partition, the respondent shall not appear "or appearing shall not show sufficient cause against making partition of the premises, the said Orphans' Court shall enter upon the record of the court a decree that such partition be made among the parties interested."

*Section* 3279 of the same chapter also provides that if partition be ordered, and it shall appear that the lands described in the petition cannot be properly divided, the court shall order a sale, and a division of the proceeds.

The proceedings instituted by the petitioner in this case are opposed on two grounds:

(1) Because Lucinda Berry and Edward Abbott merely had a license to use the lot in question for burial purposes.

(2) Because no title passed to Oscar Berry under the residuary clause of the will of Lucinda Berry, even if she had title to a one-half interest in said lot; his interest was, therefore, merely a one-sixth of a one-half interest therein, which could only be partitioned by a sale, and it was against public policy and decency to sell or partition in such proceeding a lot in which dead bodies had been buried.

If the deed of the cemetery corporation merely granted a license to Lucinda Berry and Edward Abbott, their rights clearly cannot be partitioned. The deed was to them "their heirs and assigns, * * *. to be held, occupied and used" by them, "their heirs and assigns, for the burial of the dead. Expressly subject, nevertheless, to all such rules and regulations as may from time to time be adopted by the said corporation for the regulation of said cemetery."

The rules and regulations referred to provide that the lot cannot be divided into smaller portions or sold without the permission of the cemetery board. They also provide that if a lot holder shall die without a devise or any known kindred, such lot shall revert to the corporation and that no lot owner can receive any compensation for the burial of any person in his lot.

If the rights of the grantees in the lot in question were merely restricted to burial purposes, it could well be argued that the deed conveyed a base or qualified fee, but the other restrictions referred to in the deed, and, therefore, incorporated in it by references, are inconsistent with any other conclusion than that a mere irrevocable license was intended.

The same conclusion was reached in *Love v. Robinson*, 219 *Pa.* 469, 68 *A.* 1033, 12 *Ann. Cas.* 974. In that case, the deed was to the grantee, "her heirs and assigns forever, subject, however, to the rules, conditions and limitations and with the privileges specified in the rules and regulations hereto annexed, and such others as may hereafter be adopted" for the sole and only purpose of a place of burial.

It is true that the language used in that deed and in the

rules and regulations apparently attached to it was slightly different from the deed executed by the cemetery corporation to Mrs. Berry and Edward Abbott, but the words "rules and regulations" in that deed would seem to have the same meaning as the words used in the deed in the Pennsylvania case.

See, also, *Anderson v. Acheson*, 132 *Iowa*, 744, 110 *N. W.* 335, 9 *L. R. A.* (*N. S.*) 217; *Kincaid's Appeal*, 66 *Pa.* 441, 5 *Am. Rep.* 377; *Windt v. German Reformed Church*, 4 *Sandf. Ch.* (*N. Y.*) 471; *Richards v. N. W. Protestant Dutch Church*, 32 *Barb.* (*N. Y.*) 42; *Craig v. First Presbyterian Church*, 88 *Pa.* 42, 32 *Am. Rep.* 417; *Page v. Symonds*, 63 *N. H.* 17, 56 *Am. Rep.* 481; *Catholic Church v. Manning*, 72 *Md.* 116, 19 *A.* 599; *Dwenger v. Geary*, 113 *Ind.* 106, 14 *N. E.* 903; 5 *R. C. L.* 246; *Darlington v. J. J. Ward*, 48 *S. C.* 570, 26 *S. E.* 906, 38 *L. R. A.* 328; *Waldron's Petition*, 26 *R. I.* 84, 58 *A.* 453, 67 *L. R. A.* 121, 106 *Am. St. Rep.* 688; *Laurel Hill Cemetery Co. v. City and County of San Francisco*, 152 *Cal.* 464, 93 *P.* 70, 27 *L. R. A.* (*N. S.*) 261, 14 *Ann. Cas.* 1080; *People ex rel. Gaskill v. Forest Home Cemetery Co.*, 258 *Ill.* 36, 101 *N. E.* 219, *L. R. A.* 1917B, 946, *Ann. Cas.* 1914B, 280.

While, perhaps, not controlling, that a mere license was intended is also shown by the clause in *Section* 2 of *Article* 9, which states that "ownership of a lot consists in the right of interment." But, even if the deed in question should be construed to pass a base or qualified fee, it would not decide the question before this court in favor of the petitioner. He contends that he acquired all the interest of Mrs. Berry in the lot in question under the general residuary clause of her will. In that clause she disposed of "all the rest, residue and remainder" of her "property, real, personal and mixed whatsoever and wheresoever."

The language of this clause is broad, but as is contended by the respondents there are cases that hold that, while an interest in a burial lot in which a person has title in fee is strictly speaking property, yet it is property that is usually treated as a family heritage and of such a peculiar and limited nature that the presumption is that a testator did not consider it an asset, or intend it to pass under the general language of the residuary clause of a

will. *Petition of Waldron*, 26 *R. I.* 84, 58 *A.* 453, 67 *L. R. A.* 119, 106 *Am. St. Rep.* 688; *Gardner v. Swan Point Cemetery*, 20 *R. I.* 646, 40 *A.* 871, 78 *Am. St. Rep.* 897; *Robertson v. Cemetery Co.*, 116 *Tenn.* 221, 93 *S. W.* 574; 11 *C. J.* 60.

Applying the same rule, it has been held that a cemetery lot belonging to a testator cannot be sold by his executor, though the will gave him a general power of sale. *Derby v. Derby*, 4 *R. I.* 414.

But it is not necessary for me to pass on that question as it is contrary to public policy to either sell or divide a cemetery lot in which dead bodies have been buried.

From very early times courts of law and of equity have had concurrent jurisdiction in partition cases. *Pomeroy's Eq. Jurisprudence, Vol.* 4, § 1386; *Pomeroy's Equitable Remedies, Vol.* 6, § 703; *Beech's Modern Equitable Jurisp.*, § 982.

Subject, perhaps, to some limitations, the same general rule still applies in this state, though jurisdiction in such cases has been expressly conferred on the Orphans' Court by statute. *Bradford v. Robinson*, 7 *Houst. (Del.)* 29, 30 *A.* 670.

In a court of law a co-owner, independent of statute, ordinarily has the absolute right to a division of the common property, regardless of the character of such property, or the difficulty, inconvenience or pecuniary loss resulting from a division. *Pomeroy's Eq. Remedies*, §§ 702, 708; 20 *E. C. L.* 724, 739.

Generally speaking, equity follows the law and the same rule is applied in that court. *Pomeroy, Eq. Remedies*, §§ 702, 708. There have always been cases, however, where equity would refuse to decree a division in partition cases.

In *Pomeroy, Eq. Remedies, Vol.* 6, § 708, the author says:

"While the character of the property affords no bar to partition there are many cases in which equity will refuse to decree a division as where property is charged with some trust or is dedicated to some use which would be defeated by the partition. * * * Where property is devoted to a particular use, no partition detrimental to public right or policy will be permitted, and where property is devoted to a religious or charitable use of such a nature that partition would be especially disastrous, equity will not enforce a division."

The public policy rule applies with equal force in this court. Whether the other rules apply need not be considered.

In *Williston on Contracts, Vol* 3, § 1629, in discussing the public policy rule, the author says:

"In a recent English decision (*Naylor-Benjon & Co. v. Krainische Industrie Gessellschaft*, [1918] 1 *K. B.* 331, 342) the fundamental principles guiding the court were thus stated: The question of public policy may well give rise to a difference of judicial opinion; * * * it must fluctuate with the circumstances of the time. * * * The principles of public policy remain the same, though the application of them may be applied in novel ways. The ground does not vary. As it was put by Tindal, C. J., in *Horner v. Groves;* 'whatever is injurious to the interest of the public is void on the grounds of public policy'."

While the examples of the application of the public policy rule in contract cases are numerous, the application of this rule to partition cases does not often appear in the reports. Lord Coke, however, says that division of a castle necessary for the defense of the realm would have been refused on that ground. *Beech on Eq. Juris.*, § 983; 30 *Cyc.* 178.

In more recent days, while a statute was also involved, perhaps based in part on the same ground, a division of a railroad has been refused. *Pittsburgh, C. & St. L. Ry. Co. v. Baltimore & O. R. R. Co.*, 38 *Ohio St.* 614. While I have not had access to those cases, *Abell v. Weir*, 24 *Grant, Ch. (U. C.)* 464, and *Jenkins v. Martin*, 20 *Grant, Ch. (U. C.)* 613, are also cited to sustain the proposition that crown lands are not subject to partition. See 30 *Cyc.* 178.

In *Brown v. Lutheran Church*, 23 *Pa.* 495, which was apparently an action at law under the Pennsylvania statute, two religious societies owned a church and about seven acres of land, about one acre of which had been used by them as a cemetery for at least a generation. Differences having arisen, one of the societies sought to partition the property. While the language of the Pennsylvania partition statute is broad and comprehensive and contains no exceptions whatever, the court held that such property was not within its spirit and meaning. *Love v. Robinson*, 219 *Pa.* 469, 68 *A.* 1033, 12 *Ann. Cas.* 974, which was a bill to divide a private lot in a cemetery in which there remained room for only two graves is to the same effect, though the court also based its decision, in part, on a different ground.

*Brown v. Lutheran Church* has sometimes been cited to sup-

port the conclusion that public policy prohibits the partition of a cemetery lot in which dead bodies had been buried where the situation is such that a sale would be necessary. See *Love v. Robinson*, 219 *Pa.* 469, 68 *A.* 1033, 12 *Ann. Cas.* 974; *Anderson v. Acheson*, 132 *Iowa*, 744, 110 *N. W.* 335, 9 *L. R. A. (N. S.)* 217; 5 R. C. L. 246; 30 *Cyc.* 178.

In *Latshaw's Appeal*, 122 *Pa.* 142, 15 *A.* 676, 9 *Am. St. Rep.* 76, however, the court, in commenting on that case said that it merely involved the principle that where partition proceedings disastrously affect property purchased for a charitable use, a decree will be refused and that whatever was said by the court on the question of public policy was mere *dicta*.

But regardless of whether the court might have based its conclusion on some other ground, both the Supreme Court and the lower court seem to have applied the public policy rule.

In holding that the case was not within the spirit and meaning of the Pennsylvania statute, the Supreme Court, speaking through Woodward, J., said:

"The only form in which the partition asked for could be made would be by a public sale; and what would these graves, of inestimable value to surviving relatives, fetch in market? They would prove a prejudice to the property, and would depreciate its price. And then in the hands of a purchaser they would be almost sure of desecration. Pennsylvania, with a refined and elevated sense of what is due to both the dead and the living, * * * has provided a penalty for willful injuries done to graveyards—not only to the tombstones and fence-railings, but even to the 'shrubs and plants' which bereaved love cultivates in such places. The sentiment is sound, and has the sanction of mankind in all ages, which regards the resting-place of the dead as hallowed ground—not subject to the laws of ordinary property, nor liable to be devoted to common uses."

The conclusion of the court is, therefore, based on the ground that a cemetery in which bodies have been buried is and always has been considered as hallowed ground. That making it subject to the ordinary laws of property, or its application to commercial or other ordinary uses in any manner would be a desecration and would not only affect the feelings of those particularly interested in those buried in it, but would be so revolting to the public at large that it would be contrary to public policy to permit it.

It is true that the court in the *Brown Case*, 23 *Pa.* 495, said

that a sale would be necessary and the petitioner in this case merely asked for a division of a lot and claimed that a sale would not be necessary. While, perhaps, differing to some extent in degree, the same general principles announced in that case would seem to apply here, though if all finer feelings were disregarded, some sort of a division in the requisite number of shares might be physically possible.

While the exact size of the lot does not appear, it does appear that it only consisted of one cemetery lot and that the petitioner sought to have the whole of it partitioned.

Considering the fact that the father and mother of both the petitioner and the respondent, Minnie E. Abbott, are buried in the same lot, it would be revolting to the public sense of propriety for the court to attempt to partition any such property among the parties in interest whether their shares be great or small.

While there is no discussion on this question, *Love v. Robinson*, 219 *Pa.* 469, 68 *A.* 1033, 12 *Ann. Cas.* 974, *supra*, and *Sharp v. Sharp*, 148 *Mich.* 278, 111 *N. W.* 767, would seem to support the conclusion that for reasons of policy, a cemetery lot in which bodies have been buried is not within the spirit and meaning of a partition statute.

A division would also be contrary to the conditions subject to which the lot was granted.

*Section 2, Article* 9, prohibits the division of a lot into smaller portions than originally plotted and *Section* 3 of the same article prohibits any sale or transfer without the permission of the Cemetery Board, which does not appear to have been given in this case.

My conclusion, therefore, is that sufficient cause for refusing to make the order prayed for has been shown, even if Lucinda Berry and Edward Abbott had a base or qualified fee in the lot in question.

By what I have said I do not mean, however, that a cemetery lot which is owned in fee, but in which no bodies have been buried, cannot be divided amicably, if the parties in interest so desire and there are no valid restrictions in the grant prohibiting it; nor do I mean that in the absence of such valid restrictions a court would ordinarily refuse to partition a cemetery lot of that

character. *Brown v. Lutheran Church,* 23 *Pa.* 495; *Love v. Robinson,* 219 *Pa.* 469, 68 *A.* 1033, 12 *Ann. Cas.* 976.

For all of the reasons above given, the prayer of the petitioner is refused.