# First Evangelical Lutheran Church Petition

*Howard M. Whitehead* and *Carl E. Fisher*, for petitioners.

LAIRD, P. J., September 19, 1957.—This matter is before the court on the petition of First Evangelical Lutheran Church of Greensburg and First Evangelical and Reformed Church of Greensburg under the provisions of the Act of June 25, 1913, P. L. 551, 9 PS §§48, 49, seeking an order vacating a burial ground known as the "Old German Cemetery" situate on the west side of South Main Street in the City of Greensburg, and authorizing the sale of said premises to First Evangelical Lutheran Church of Greensburg free and clear of all claims or interest of all and every owner or owners of lots in said burial ground.

No answer having been filed in reply to the petition, a full hearing was had in open court on July 23, 1957, after due notice in accordance with law. At the hearing upon petition three parties appeared without coun-

sel to voice objections as relatives of persons buried in said cemetery. . . .

### Discussion

It must be conceded that at common law no authority existed for the vacation or sale of property used as a burial grounds: Brown v. Lutheran Church, 23 Pa. 495. However, there is no question of the right of the legislature to control the use of land within the State and the legislature has passed numerous statutes providing for the removal, relocaton, vacation and sale of burial grounds.

In Sapper v. Mathers, 286 Pa. 364, Mr. Justice Walling said, at page 366:

"It is a matter of common knowledge that, to meet altered conditions and in the interest of public health, the location of cemeteries must often be changed. Recognizing this, the legislature has provided how and when it may be done."

The petition now under consideration has been presented under the provisions of the Act of June 25, 1913, P. L. 551, 9 PS §§48 and 49, which reads as follows:

"Whenever any incorporated or unincorporated church, cemetery, or burial association owns ground, wholly or in part in any city, township, or borough in this Commonwealth, and by reason of the growth thereof, as well as for sanitary purposes, it is deemed necessary or desirable, in the opinion of the said church, cemetery, or burial association, to change the location thereof; . . . or, from other causes, any burial-ground, belonging to or in charge of any such incorporated or unincorporated church, cemetery, or burial association, has ceased to be used for interments, and has become so neglected as to become a public nuisance; or that the remains of bodies interred in any such neglected or disused cemetery, in any city, township, or borough, interfere with and hinder the

improvements, extensions, and general progressive interest of any city, township, or borough,—then, and in such a case, the courts of quarter sessions of the several counties of this Commonwealth, upon petition of the managers, trustees, or other officials, in whom is vested the management of the affairs of such incorporated or unincorporated church, cemetery, or burial association, setting forth that, by reason of the growth of said city, township, or borough, it has been necessary to change the location thereof; or that, by reason of the proximity of adjacent property, the interment of the dead in said cemetery or burial-ground, in the interest of public health, has been prohibited; or, from other causes, said burial-ground has ceased to be used for interments, and has become so neglected as to become a public nuisance; or that the remains of bodies therein interfere with and hinder the improvements, extensions, and general progressive interests of any such city, township, or borough, and the public good; and after three weeks' advertisement of hearing in open court, for the purpose, the said court is hereby vested and empowered with full power and authority, after a full hearing of the parties therein, proofs and allegations, to authorize and direct the removal of the remains of all the dead from such cemetery or burial-ground to such other suitable ground as said managers, trustees, or officers may have procured, in the vicinity of such city, township, or borough, for the reinterment of the bodies, or to such lots or sections in a properly regulated burial-ground or cemetery in the vicinity of such city, borough or township, and to order and decree that the ground of such cemetery be forever vacated for burial purposes.

"After the removal of the bodies, as provided for in section two, the said court of quarter sessions may, upon petition of the said managers, trustees, or other officers referred to in said section, and upon being

satisfied that the order of the court has been duly complied with, authorize and empower the said managers, trustees, or other officers, in whom is vested the management of such incorporated or unincorporated church, cemetery, or burial association, to sell said burial ground at public or private sale, either as a whole or divided into lots, as they may deem most advisable and most likely to realize the most money, and to make, execute, and deliver to the purchaser or purchasers a deed or deeds therefor, which deed or deeds shall vest in said purchaser or purchasers a perfect and indefeasible fee simple title, free and clear from all claims or interest of said incorporated or unincorporated church, cemetery, or burial association, and of all owner or owners of lot or lots in said burial-ground, the proceeds thereof being substituted in all respects for said ground."

A reading of this act discloses five separate conditions, under which the court has jurisdiction to decree the vacation of a burial ground and authorize its sale. First, by reason of the growth of the municipality as well as for sanitary purposes, it is deemed necessary or desirable, in the opinion of the church to change the location; second, by reason of the opening of streets; third, when the interment of the dead may, in the interst of public health, be prohibited; fourth, when a cemetery has ceased to be used for interments, and has become so neglected as to become a public nuisance; and fifth, when the remains of bodies interred in any neglected or disused cemetery interfere with and hinder the improvements, extension and general progressive interest of any city.

The petition now before the court alleges four of the five conditions set forth under this statute, and evidence has been presented in support of them without contradiction.

The evidence shows that the then Borough of Greensburg by ordinance passed August 5, 1889, prohibited further burials within the borough limits on and after October 1, 1890. Although the ordinance does not specify the reason for the prohibition, it is common knowledge that the growth of communities and the accompanying problems of sanitation were the impelling reasons for the adoption of such ordinances.

As a result of this ordinance, the two churches owning the "Old German Cemetery" took action to move the cemetery by appointing a joint committee to secure ground outside the Borough of Greensburg for a new cemetery. This was accomplished and a new cemetery, Union Cemetery, was incorporated by a decree of the Court of Common Pleas of Westmoreland County on August 23, 1890. In conjunction with this action, both congregations also formally voted to vacate the old cemetery, remove the bodies buried therein to the new cemetery and to sell and dispose of the ground.

The evidence shows that removals from the old cemetery to Union Cemetery were commenced October 26, 1891, and continued to May 31, 1927, by the relatives and friends of persons buried in the "Old German Cemetery", until 241 removals had been recorded in the records of the new Union Cemetery. The evidence further shows that an unknown number of removals were also made to St. Clair Cemetery, Hillview Cemetery and Brush Creek Cemetery, and even three to Zion Lutheran Church, Greensburg.

Although no record exists of the number buried in the "Old German Cemetery", nor could any lot plan be found, a defacto removal of the cemetery has been made by the two churches through congregational action in 1890 and by the relatives and friends in the

removals made over the years. The evidence here presented fully satisfies the requirements of the first condition of the statute.

The third condition for proceeding under the Act of 1913, supra, arises where "by reason of the proximity of adjacent property the interment of the dead may, in the interest of public health, be prohibited." The evidence presented shows that interments were in fact prohibited on and after October 1, 1890. This proof meets the requirements of this condition.

The next condition is applicable where from other causes a burial ground has ceased to be used for interments and has become so neglected as to become a public nuisance. It cannot be said, nor did any evidence presented imply, that the burial ground is presently a public nuisance. However, the proofs show that by 1894 the cemetery was fast falling into decay and dilapidation and that under date of May 5, 1938, the City of Greensburg threatened to join with petitioning citizens to have the cemetery declared a public nuisance. This situation was apparently avoided by the two churches leasing the cemetery to the City of Greensburg for recreational use. This evidence shows that the cemetery created a condition that was, and may again become, a public nuisance. It may be argued that the neglected condition of the cemetery was the neglect of the churches, but the two deeds to cemetery lots offered in evidence state that the graves were to be kept in good order by the owners. Also, in this connection it is noted that apparently the bodies in most of the graves had long before been removed and the occasion or need for care of grave lots had ceased.

Finally, the act cited confers jurisdiction on the court when the remains of bodies interred, in any neglected or disused cemetery, interfere with and hinder the improvement, extension and general progressive interest of any city. The evidence is clear

that the "Old German Cemetery" has become a neglected and disused cemetery, and that the existence of the few possible remaining graves therein does prevent and hinder the improvement, extension and general progressive interest of the City, by preventing the effective use of this tract of land in excess of three acres, near the center of the city.

It, therefore, appears to the court that petitioners have met four of the conditions of the Act of June 25, 1913, P. L. 551, and that any one of the four conditions is sufficient to authorize the court to vacate the cemetery.

No proceeding, however, dealing with a cemetery should be taken lightly, even by the court, and due consideration must be given to the sentiment and respect we all hold for the memory, and place of repose. of our dead. Here, however, a situation exists where there has been a defacto vacation and removal of the cemetery, and in fact, an abandonment.

"If no interments have for a long time been made, and cannot be made, therein, and in addition thereto the public, and those interested in its use, have failed to keep and preserve it as a resting place for the dead, and have permitted it to be thrown out to the commons, the graves to be worn away, gravestones and monuments to be destroyed, and the graves to lose their identity, and if it has been so treated and used or neglected by the public as entirely to lose its identity as a graveyard, and is no longer known, recognized, and respected by the public as a graveyard, then it has been abandoned; or if the public and those interested in its use as a graveyard, have permanently appropriated it to a use or uses entirely inconsistent with its use as a graveyard . . . then it has been abandoned": 5 R. C. L. 242.

No monuments remain to mark the location of any graves in this cemetery, nor does any other evidence

exist to determine or locate any unremoved graves. For the past 12 years the premises have been used and recognized as a playground for children. After full notice by both churches only two persons have come forward who state definitely they have any friends or relatives whose bodies have not been removed and who believe they know the possible location of the graves. Several replies were received by the churches but none were sure that their relatives or friends had not been removed nor did they know of any grave locations. In view of the evidence of the many removals made beginning in 1891, it may reasonably be found that all bodies have already been removed except the 12 testified to by Miss Pearl Watt and Mr. James Silvis. Mrs. Wreatha Jane Barie testified she had a brother buried in the cemetery on March 29, 1891. It is noted that this is after burials were prohibited, and also that Mrs. Barie further admitted that her mother could not find this grave some 30 years ago. A reference from a city record was also offered showing the possible location of several graves, but no evidence was presented that the bodies in these graves were not removed.

It cannot, under these circumstances, be deemed disrespect for the memory of the dead to formally decree a vacation of this cemetery, and authorize the removal of the few remaining bodies when the cemetery has been vacated and abandoned in fact these many years. It must be remembered that 67 years has elapsed since the churches first proposed the removal of this cemetery and 66 years since removals were first begun. Over the ensuing years all resemblance to a cemetery has ceased, all interment prohibited, and it can no longer be said that this cemetery represents any monument or memory to the dead.

This type of proceeding is not one on which there has been a large volume of reported cases.

"There is no question whatever of the right of the legislature to control the use of lands in the State no matter what restrictions, attainder or qualifications. But the fact that the legislature has acted must appear; and when common-law rights are interfered with, it must clearly appear in the case at issue": Petition of Chester Monthly Meeting of the Religious Society of Friends, 56 D. & C. 231, 245.

This petition now before the court fully meets this requirement.

Few cases have been reported under this particular statute, but the various statutes on burial grounds have been before our appellate courts and upheld: Craig v. First Presbyterian Church of Pittsburgh, 88 Pa. 42; Kincaid's Appeal, 66 Pa. 411; Sapper v. Mathers, 286 Pa. 364.

"The interment of dead bodies in the midst of thickly populated districts is likely to prove a menace to the health of the surrounding population and therefore may be prohibited . . . such enactments are not unconstitutional, either as impairing the obligation of contracts, or taking private property . . . without compensation": 5 R. C. L. 239, 240.

The final matter for consideration is raised by the objection of Mr. James Silvis, who testified he had relatives buried in the cemetery and produced a deed for a lot. The law on this point is summarized in 5 R. C. L. 244, 246, wherein it is stated:

"The owner of a lot in a cemetery, who has purchased it for the purpose of burial, holds it subject to the right of the municipality to prohibit further burials within the cemetery . . . As a general rule, one who purchases and has conveyed to him a lot in a public cemetery does not acquire the fee to the soil, but only the easement or license of burial therein. . . . The right of burial in a cemetery is not an absolute right of property, but merely a privilege or li-

cense, to be enjoyed so long as the place continues to be used as a burial ground, subject to municipal regulation and control, and legally revocable whenever the public necessity requires. It is a right of limited use for purposes of interment."

This view has found acceptance in Pennsylvania. Mr. Justice Sharswood, in Kincaid's Appeal, 66 Pa. 411, states, quoting from page 420:

"We hold that it was the grant of a mere license or privilege to make interments in the lots described, exclusively of others, as long as the ground should remain 'the burying-ground of the church'. Whenever by lawful authority it should cease to be a burying-ground his right and property would cease. The lot-holder purchased a license—nothing more—irrevocable as long as the place continued a burying-ground, but giving no title to the soil . . . While the license continued he could, perhaps, bring trespass or case for any invasion or disturbance of it, whether by the grantors or by strangers. But if in the course of time it should become necessary to vacate the ground as a burying-ground, all that he could claim, either in law or equity, would be that he should have due notice and the opportunity afforded to him of removing the bodies and monuments to some other place of his own selection, or that on his failing to do so such removal should be made by others." See also Craig v. First Presbyterian Church, supra, at page 51.

The statute itself, in the case at issue, further specifically covers this point wherein it provides that deed or deeds for vacated cemetery premises shall vest a "perfect and indefeasible fee simple title, free and clear from all claims or interest . . . of all owner or owners of lot or lots in said burial-ground."

After having carefully examined the record, we believe the petition and proofs in this case fully meet

the conditions of the Act of June 25, 1913, P. L. 551, and we therefore enter the following

## Decree

And now, to wit, September 19, 1957, after hearing and after due and careful consideration, it is ordered, adjudged and decreed that the First Evangelical Lutheran Church of Greensburg and the First Reformed Church of Greensburg also known as the First Evangelical and Reformed Church of Greensburg be and they are hereby authorized and directed to search for and remove the bodies, if found, of the five relatives of Miss Pearl Watt, the seven relatives of Mr. James Silvis, and any and all other bodies known or found in the "Old German Cemetery", and it is further ordered, adjudged and decreed that the premises known as the "Old German Cemetery" as hereafter described, be and the same hereby are forever vacated for burial purposes.